IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| George Brown, | ) | C/A No. 3:10-2860-JFA-PJG |
| Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| City of Columbia and Allison Baker, | ) | |
| Defendants. | ) | |

The plaintiff, George Brown ("Brown"), filed this employment case alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq.; 42 U.S.C. § 1983 and the First Amendment to the United States Constitution; as well as a state law claim for civil conspiracy.[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion for summary judgment. (ECF No. 50.) Brown filed a response in opposition (ECF Nos. 56 & 57) and the defendants replied (ECF No. 58). Having carefully considered the parties' submissions and the applicable law, the court finds that the defendants' motion should be granted.

**BACKGROUND**

The following facts are either undisputed or are taken in the light most favorable to Brown, to the extent they find support in the record. Brown, born in 1947, was hired as Parks Superintendent in 2004 on the recommendation of Defendant Allison Baker, the Assistant City Manager for Defendant City of Columbia. As Parks Superintendent, Brown was responsible for

---

[1] By order dated November 21, 2011, the court dismissed with prejudice all claims against former Defendant Damon McDuffie. (See ECF No. 59.)



managing and maintaining the City's parks, including overseeing the maintenance of the buildings and grounds of the parks, managing personnel, and planning and maintaining a budget. Brown was responsible for 57 City parks, consisting of almost 600 acres as well as 37 buildings.

From 2004 to 2008 Brown apparently had no job performance issues. In June of 2008, however, Baker placed Brown on probation for six months. City management gave Brown a list of tasks to complete. Two assistant superintendents under Brown's supervision were also placed on probation at that time. Although Brown contends that he made progress on the tasks assigned to him, Baker apparently remained dissatisfied with Brown's progress and extended his probationary period for another sixty days. In mid-August 2009, Baker indicated that Brown could resign or face termination of his employment. Baker refused a request by Brown to be transferred to another department. Around this time, Brown contends that he heard that a co-worker, McDuffie, was receiving improper kickbacks and reported this allegation to Baker. Brown's employment with the City ended on September 29, 2009, less than a month before his five-year anniversary with the City, at which time he would have become a vested member of the state retirement system. According to Brown, a younger employee currently holds his position on an interim basis, as the full-time position remains vacant.

## DISCUSSION

**A.** **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish



the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks & citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.     ADEA Claim**

The United States Supreme Court has held that to prevail on an ADEA claim, a plaintiff must show that age was the "but for" cause of the adverse action of the employer. Gross v. FBL Fin.

Servs., Inc., 557 U.S. 167, 176 (2009) ("To establish a disparate-treatment claim under the plain language of the ADEA . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."). Typically plaintiffs in ADEA cases attempt to do so by employing the McDonnell Douglas proof scheme.[2] See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, " 'the McDonnell Douglas frame-work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*.' " Id.

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains

---

[2] Although both parties analyze the ADEA claim under the proof scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which is often used in employment cases, the United States Supreme Court has expressly not addressed whether this framework is properly applied in the context of the ADEA as opposed to Title VII. See Gross, 557 U.S. at 174 ("This court has never held that this burden-shifting framework applies to ADEA claims. And, we decline to do so now."); see also id. at 175 n.2. However, the United States Court of Appeals for the Fourth Circuit has continued to apply it in ADEA cases post-Gross, and the court has applied it here. See, e.g., Bodkin v. Town of Strasburg, 2010 WL 2640461, at *4-5 (4th Cir. June 29, 2010).

PJG

the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

To establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) at the time of the adverse employment action, he was performing his job at the level that met the employer's legitimate expectations; and (4) he was discharged under circumstances that raise a reasonable inference of unlawful discrimination. See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310-12 (1996) (discussing the *prima facie* case under the ADEA); see also Warch v. Ohio Casualty Ins. Co., 435 F.3d 510 (4th Cir. 2006).

In support of its motion for summary judgment, the City has presented evidence that Brown was terminated because of job performance problems.[3] The relevant time to evaluate an employee's performance is at the time of the adverse action. See, e.g, Miles v. Dell, Inc., 429 F.3d 480, 485 (4th Cir. 2005) (Title VII) (stating that the third factor of a *prima facie* case includes that "she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action"). Moreover, in determining satisfactory job performance, it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff. King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003) (Title VII) (stating that plaintiff's own testimony of satisfactory job performance cannot establish a genuine issue as to whether he was meeting his

---

[3] Because the City's stated reason for terminating Brown was poor work performance—*i.e.*, that he was not meeting its legitimate expectations—the evidence as to these issues overlaps; therefore, the court addresses the *prima facie* elements and the pretext prong of the McDonnell-Douglas framework together. See Warch, 435 F.3d at 516 (noting the flexibility of the McDonnell-Douglas framework and finding "no impermeable barrier that prevents the employer's use of such evidence [of an employee's unsatisfactory work performance] at different stages of the McDonnell Douglas framework").

*PJG*

employer's expectations in a race discrimination case) (citing Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996)). An employer's expectations of its employees are "legitimate" when they are honestly held; whether the employee agrees with those expectations is not the test. Thornley v. Penton Pub., Inc., 104 F.3d 26, 30 (2d Cir. 1997) (stating that "a plaintiff must satisfy the employer's honestly-held expectations"). In this context, the term "legitimate" means that expectations cannot be a "sham designed to hide the employer's discriminatory purpose." Warch, 435 F.3d at 518. As long as the requirements imposed are bona fide expectations, it is not the court's province to determine whether an employer demands too much of its workers. Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1179 (7th Cir. 1997) (Posner, J.).

Here, Brown contends that his perceived unsatisfactory job performance resulted from the City's lack of support through inadequate staffing and funding. Even accepting these assertions as true, they do not establish that the City's proffered reasons for terminating him were pretextual. Although Brown lays the blame for his perceived performance problems elsewhere, nothing in the record indicates that Baker's beliefs about Brown's performance deficiencies were not genuinely held. See Holland v. Washington Homes, Inc., 487 F.3d 208, 217-18 (4th Cir. 2007) (concluding that no reasonable juror could conclude that the decision maker's reason was pretextual where the plaintiff's evidence "failed to address whether [the decision maker] did not honestly believe that the threats were made") (quoting Tinsley v. First Union Nat'l Bank, 155 F.3d 435 (4th Cir.1998)). The law is clear that it is the perception of the decision makers, not the plaintiff, that is important in the determination of whether a plaintiff can demonstrate pretext. Id.

Brown's attempt to show pretext by comparing his discharge to Baker's treatment of McDuffie, a younger employee, for what Brown claims are similar problems is unavailing.

Page 6 of 12

PJG

Generally, to be similarly situated and thus permit a valid comparison, a proffered comparator must have dealt with the same decision maker, been subject to the same standards, and have engaged in the same conduct without mitigating circumstances that would distinguish his conduct or the employer's treatment of him for it. Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992) (Title VII & ADEA) (defining "similarly situated").[4] Brown's argument on this point rests on his contention that the unfinished tasks for which he was terminated in 2009 remained unaccomplished under McDuffie. (See Pl.'s Mem. Opp'n Mot. Summ. J. at 13, ECF No. 56 at 13.) However, the unrefuted evidence shows that McDuffie did not replace Brown as Parks Superintendent and was not responsible for completing the tasks Brown left undone. Further, as the defendants point out, Brown was terminated for failing to rectify numerous problems at several parks over a period of over eighteen months; no evidence suggests that the City experienced similar problems with McDuffie over such a period. See, e.g., Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 188 (4th Cir. 2004) (stating that the *prima facie* case includes showing that "other employees who are not members of the protected class were retained under apparently similar circumstances") (42 U.S.C. § 1981); Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993) (stating that the *prima facie* case for disparate discipline requires that the comparators' prohibited conduct be of comparable seriousness to the plaintiff's) (Title VII); Lightner v. City of Wilmington, N.C., 545 F.3d 260, 265 (4th Cir. 2008) ("The similarity between comparators and the seriousness of their respective offenses

---

[4] The Fourth Circuit has not issued a published case on this point; however, the following unpublished cases have cited with approval the Mitchell decision: Haywood v. Locke, No. 09-1604, 2010 WL 2711294 (4th Cir. July 6, 2010) (unpublished); Forrest v. Transit Mgmt. of Charlotte, Inc., 245 F. App'x 255 (4th Cir. 2007) (unpublished); Heyward v. Monroe, 166 F.3d 332, 1998 WL 841494, at *2 (4th Cir. 1998) (Table); Edwards v. Newport News Shipbuilding & Dry Dock Co., 166 F.3d 1208, 1998 WL 841567, at *3 (4th Cir. 1998) (Table).

PJG

must be clearly established in order to be meaningful.") (Title VII, disparate discipline). Finally, as Brown himself admits, McDuffie was in fact ultimately suspended by Baker in the fall of 2010 for failing to perform his duties satisfactorily. (See Pl.'s dep. at 65-66, ECF No. 50-2 at 41-42; Pl.'s Mem. Opp'n Summ. J. at 12-13, ECF No. 56 at 12-13.)

Here, no reasonable jury could find that the City's proffered reason of Brown's sustained performance issues was not the true reason for his termination, or that age discrimination was the true reason. See Burdine, 450 U.S. at 256. The record contains insufficient evidence from which a reasonable jury could find that but for Brown's age, he would not have been discharged. See Gross, 557 U.S. at 176. Accordingly, the City is entitled to summary judgment on this claim.

**C.  First Amendment Claim**

To establish a claim for retaliation in violation of the First Amendment's free speech protections, a public employee plaintiff must show: (1) that he spoke as a citizen, not an employee, on a matter of public concern; (2) that his interest in the expression at issue outweighed the employer's interest in providing effective and efficient services to the public; and (3) that there was a sufficient causal nexus between the protected speech and the retaliatory employment action. Smith v. Frye, 488 F.3d 263, 267 (4th Cir. 2007).

The first required element recognizes the United States Supreme Court's holding that to prevail on a First Amendment free speech claim, a public employee must show that he spoke as a citizen, rather than an employee, on a matter of public concern. Garcetti v. Ceballos, 547 U.S. 410 (2006). In Garcetti, the Court recognized the need to balance the interests of a citizen who is a public employee in commenting on matters of public concern with the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. Id.



at 417. The Garcetti Court addressed facts similar to those presented here. In that case a public employee—a deputy district attorney—alleged that he had been subjected to retaliatory employment actions based on his testimony and written memoranda regarding a search warrant that he believed had been obtained with false information. In concluding that the attorney's speech was not protected because he did not speak as a citizen on a matter of public concern, the Garcetti Court examined various factors. It found that the location where the speech occurred was not a determinative factor. Id. at 420-21. Nor was the fact that the memorandum concerned the subject matter of the attorney's employment. Id. at 421. Rather, the Court focused on the key fact that the attorney's speech was made *pursuant to his duties* as the calendar deputy district attorney; the attorney was doing what he was employed to do. Id. The attorney's speech, the Court observed, *owed its existence* to his professional responsibilities as a public employee. Id. The Court expressly held that when public employees make statements "pursuant to their official duties," they are not speaking as citizens for First Amendment purposes. Id.

Here, Brown's First Amendment claim rests on his contention that he reported that McDuffie was receiving improper kickbacks.[5] Brown's attempt to distinguish Garcetti is unavailing, as Brown's mere assertion that he spoke as a private citizen does not make it so. His speech, like the attorney's in Garcetti, owes its existence to his professional responsibilities with the City. Furthermore, Brown cannot establish a causal connection between any reports of McDuffie's alleged wrongdoing and his termination. First, the court observes that Brown was placed on probation over a year before he made the alleged reports regarding McDuffie. Second, and more importantly,

---

[5] The defendants dispute that Brown ever made any such reports about McDuffie's alleged misconduct, but for purposes of this motion the court assumes that he did.



although Brown vaguely states that he always reported to Baker the rumors he was hearing about McDuffie, the record undermines this conjectural timeline, as Brown's own work notes make no mention of McDuffie's alleged kickbacks until the day after he was informed that he was being terminated. (See Brown Dep. 87:2- 89:24, 93:11-20; 109:10-25-111:3; Ex. 10; ECF No. 50-3 at 12-14, 15, 21-23, & ECF No. 56-10 at 2); cf. Hill v. IGA Food Depot, C/A No. 2:04-00966-WKW-VPM (WO), 2006 WL 3147672, at *6 (M.D. Ala. Nov. 2, 2006) (holding that a plaintiff failed to establish casual connection in part because he "provided no dates by which the court might judge a temporal relationship between his alleged complaint and his termination") (Title VII, retaliation). Further, the deposition testimony cited by Brown in support of his argument for temporal proximity to establish a causal connection actually supports the defendants' assertion that Baker could not have recommended Brown's termination in retaliation for any alleged speech regarding McDuffie alleged kickbacks. Therefore, Brown cannot establish a *prima facie* case of retaliation in violation of the First Amendment, and this claim must fail.

**D.     Civil Conspiracy**

Brown's civil conspiracy claim fails because this action is covered by a provision of South Carolina law stating that government employees acting within the scope of their official duties are immune from a claim of civil conspiracy. See S.C. 2010–2011 Appropriations Bill, Act No. 291, H. 4657, Proviso 89.146 (eff. June 9, 2010). There being no evidence in the record of any action by Defendant Baker taken outside the scope of his employment, this claim also fails.

## RECOMMENDATION

For the foregoing reasons, the court recommends that the defendants' motion for summary judgment (ECF No. 50) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 18, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).